**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRANDON HINES,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:21-cv-0409** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **HUMANA INSURANCE COMPANY,** | : | **Magistrate Judge Karen L. Litkovitz** |
| | : | |
| **Defendant.** | : | |

**<u>OPINION & ORDER</u>**

This matter comes before this Court on Defendant Humana Insurance Company's ("Humana") Motion for Summary Judgment (ECF No. 32). For the reasons stated more fully below, Defendant's Motion is **GRANTED IN PART**, and **DENIED IN PART**.

**I.          BACKGROUND**

Plaintiff Brandon Hines was hired as a Customer Care Specialist for Defendant Humana on August 8, 2016. (ECF No. 29 at 28:5–11). In that position, Hines answered incoming customer calls and resolved their complaints and questions. (ECF No. 32 at 5). In the fall of 2017, Plaintiff applied for four different jobs within the company, but was denied from all. Two of the positions were given to a white woman and a Black woman. (ECF No. 37 at 1). On January 25, 2018, Hines filed a complaint with Humana alleging unfair treatment, favoritism, and conflict of interest, (*see* ECF No. 32 at 9), stating that he did not trust Humana's hiring process because of previous job experiences as a member of a "certain demographic," which he stated in his deposition to mean his status as a Black man. (ECF Nos. 29 at 100; 37 at 2). Plaintiff also raised the same concerns when speaking with an associate. (ECF No. 29 at 64:14–23). Humana closed the complaint on March 14, 2018, finding his allegations unfounded. (ECF No. 37 at 2)

1

In April 2018, due to excellent performance, Hines was transferred to a new team supervised by Dominique Romero. (*Id.* at 3). Hines then submitted ideas to Humana's STAR awards program which encouraged suggestions for improving efficiency and provided monetary prizes for implemented suggestions. (ECF No. 32 at 11). Hines indicated to Romero that Humana had implemented one of his suggestions without crediting him and inquired about other suggestions he had made.[1] (ECF No. 37 at 3). In June 2018, Hines emailed Carol Perkins, Romero's supervisor, and submitted another formal complaint reiterating his previous concerns, raising concern about not being informed that he had received a STAR award despite receiving the monetary award, and put in his two weeks' notice.[2] (ECF Nos. 32 at 11; 37 at 4). While Plaintiff did not resign, he indicated that his emotional state was poor. (ECF No. 37 at 4).

In July 2018, Hines started mental health treatment and was approved for twelve weeks of leave under the Family and Medical Leave Act ("FMLA") from July 24, 2018 to October 15, 2018. (ECF No. 32 at 5, 12–13). On September 12, 2018, UNUM, Humana's third-party administrator for leave and disability requests, approved Hines for short term disability ("STD") through September 30, 2018. (*Id.* at 13). At the end of September, Hines' doctor informed UNUM that Hines needed medical leave until November 7, 2018, but that he could return to work after. (*Id.*).

On November 7, 2018, Hines returned to work for one day, but said he could not answer the phones.[3] (*Id.* at 5, 14). Hines alleges on that day he was confronted by Ranesha Jenkins, his former supervisor, about the need for a doctor's note and was "berated" by Alex Tipton, Romero's backup. (ECF No. 37 at 5). He was diagnosed with depression and began treatment but did not

---

[1] Hines alleges that he submitted four additional suggestions to the STAR program that went unrecognized, but Humana concluded the ideas did not warrant credit because the company was already working on two of the ideas and did not implement the other two. (ECF No. 32 at 12).

[2] Defendant alleges the second complaint was filed on June 8, 2018 (ECF No. 32 at 11), while Plaintiff alleges that it was submitted on June 13, 2018 (ECF No. 37 at 3).

[3] Hines testified in his deposition that he was under the impression that his therapist had put in place restrictions for his return to work, including that he was not ready to answer phones yet. (ECF No. 29 at 145:19–146:2).

return to work. (ECF No. 32 at 15). On November 16, 2018, Hines' FMLA was exhausted, and he was required to return to work on November 21, 2018. (*Id.*). On November 27, 2018, however, UNUM notified Humana that Hines was approved for STD benefits beginning November 14, 2018 to December 14, 2018. (*Id.*).

On January 24, 2019, UNUM approved Hines' STD benefits through February 1, 2019, but if he could not return to work on February 2, 2019, he needed to provide supporting medical records and a return-to-work plan. (*Id.*). On February 1, 2019, Hines' STD benefits were approved through February 13, 2019, but required he provide the same supporting documentation if he could not return to work on February 14, 2019. (*Id.* at 16). On February 25, 2019, Penny Hodgkins, UNUM's lead Disability Benefits Specialist, sent Hines' doctors a questionnaire to confirm his medical status. His therapist and primary care physician responded that Plaintiff had a continuing disability but would be able to return to work part time or full time in April or May 2019. (*Id.* at 6). UNUM approved Hines' STD benefits through March 6, 2019—hitting the twenty-six-week maximum for STD benefits—and a copy of the letter was sent to Humana. (*Id.*; No. 32-1, ¶ 5).

On March 19, 2019, UNUM informed Hines that his STD benefits had been exhausted and were closed. (ECF No. 32 at 16). Separately, Ericka O'Connell, of Human Resources ("HR"), emailed Hodgkins asking when Hines would be eligible for long term disability ("LTD") benefits, and Hodgkins responded that Hines was eligible. (ECF No. 37 at 7). On March 22, 2019, O'Connell directed Romero to send Hines a return to work ("RTW") letter telling Hines to contact Romero to "request an extension under [the] ADA" if not released to work. (*Id.*). On March 25, 2019, Romero sent Hines a letter informing him that his FMLA and STD benefits were exhausted, and that he had to return to work by March 29, 2019 with a doctor's release. (*Id.*). Romero did not tell Hines that he could request a leave extension under the Americans with Disabilities Act

3

("ADA"), and incorrectly stated that his recent STD request was denied. (*Id.* at 8). Hines argues that O'Connell understood, per UNUM, that he needed to be off work through March 2019. (*Id.*).

On March 29, 2019, Hines emails Romero and Carolyn Jackson, a Humana HR Partner: "I received the letter you sent via UPS and also USPS. I have not been released by my physician and I am still under physician care." (ECF No. 32 at 16). On April 1, 2019, O'Connell instructed Jackson to send Hines the "ADA packet" for him to seek LTD, but the packet was never sent. (ECF No. 37 at 9). That same day, Perkins, Romero's supervisor, informed O'Connell that she and Romero supported Hines' termination. (*Id.*). That same day, Hines also contacted Hodgkins at UNUM to set up LTD benefits. (*Id.*). Hodgkins informed Hines, through a message, that his LTD claim would be reviewed with a transition date of May 14, 2019. (*Id.*). While Hodgkins claimed that the March 19, 2019 letter included these details, it was not included in Hines' letter. (*Id.*).

On April 4, 2019, O'Connell informed Perkins, Romero, and Jackson that Hines' termination was justified because Hines did not stay in contact with Humana and provided untimely responses. (*Id.* at 9–10). That same day, Hines was informed that his failure to substantiate his continue absence was considered a voluntary resignation effective March 29, 2019. (ECF No. 32 at 17). Subsequently, on April 24, 2019, however, UNUM advised Plaintiff and Romero that Hines' LTD claim was under review. (ECF No. 37 at 11). Finally, on May 14, 2019, Humana sent Hines a letter demanding he return his work equipment. (*Id.*). Hines replied on May 21, 2019 that he did not intend to resign and would not comply with the letter because he was approved for LTD benefits. (ECF No. 32 at 17).

Plaintiff was released by his doctors to return to work on June 24, 2019. (ECF No. 37-1, ¶ 10). This Court, however, does not have any information to indicate that Mr. Hines was reinstated by Humana, resulting in the present litigation.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This Court asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. And "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment carries the initial burden of presenting this Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see Anderson,* 477 U.S. at 250.

This Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502,

511 (6th Cir. 2009). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III.    LAW & ANALYSIS

In Count I, pursuant to O.R.C. § 4112.01 (A)(13), Plaintiff asserts that Defendant engaged in disability discrimination by failing to accommodate him and terminating his employment. (ECF No. 37 at 13). The two allegations require different analysis. For organizational purposes, this Court will address the failure to accommodate claim ("Count I(a)") in section III.A. and the termination of employment claim due to disability discrimination ("Count I(b)") in section III.B. with the other discrimination claims: Count V for Retaliation and Count VI for Sex and Gender Discrimination.

### A.  Count I(a): Disability Discrimination – Failure to Accommodate

Defendant argues that Hines did not request an accommodation, cannot show Humana failed to provide the unrequested accommodation, and at the time, was not qualified to be a Customer Care Specialist because he could not answer the phone—his main job under the role. (ECF Nos. 32 at 19–20, 24; 47 at 5–8)). Defendant maintains that: (1) Hines admitted in his deposition that he did not know if he would ever be able to return to work and that he never requested an accommodation, (*see* ECF No. 29 at 175:17–22; 176:24–177:1, 15–20); (2) his conclusory statement to Romero that he was not released to work does not constitute an accommodation request; and (3) the responsibility to begin the interactive process does not rest on Defendant. (ECF Nos. 32 at 21–23; 47 at 9–10).

Plaintiff responds that not only could he have completed his job with an accommodation, but his extension of medical leave was reasonable. (ECF No. 37 at 14–15). Plaintiff maintains that

he could return to work in a few months, and despite the leave already taken, he was well within the non-paid 52-week leave provided under Humana's policies. (*Id.* at 16). Plaintiff alleges that Humana understood that he needed additional medical leave based on his March 29, 2019 email, and that Romero should have sent him the ADA LTD packet instead of claiming they were unaware of his accommodation request. (*Id.* at 19). Therefore, Plaintiff argues that Humana did not act in good faith. (*Id.* at 20–21).

Humana replies that it did not have access to Hines' medical records, was unaware of his need for an accommodation, and submission of those records to UNUM was not a request. (ECF No. 47 at 6). Humana argues that Hines requested unreasonable, indefinite leave with only an estimated return date. *Id.* at 11 (citing *Maat v. County of Ottawa*, 657 Fed. App'x 404, 412 (6th Cir. 2016) (where an employer has already provided an employee with a lengthy period of medical leave, an extension of that leave is only reasonable where the duration is definite)).

Under Ohio law, "[a]n employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." *King v. Steward Trumbull Memorial Hospital, Inc.*, 30 F.4th 551, 560 (6th Cir. 2022) (citing Ohio Admin. Code 4112-5-08(E)(1)). Ohio's anti-discrimination laws mirror the ADA, so this Court uses the ADA's legal standard. *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Columbus Civ. Serv. Comm'n. v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (Ohio 1998). To establish a prima facie claim for failure to accommodate, "a plaintiff must show that (1) she was disabled within the meaning of the [the statute], (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) the defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the defendant failed to provide the

necessary accommodation." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). The burden then shifts to Humana to show the accommodation would cause undue hardship for it as the employer. *Cleveland v. Fed. Express Corp.*, 83 Fed. App'x 74, 79 (6th Cir. 2003) (citing *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 781–82 (6th Cir. 1998)).

The parties' disagreement turns on factors two, four, and five, as the parties do not dispute that Plaintiff was disabled and that Humana had reason to know of his disability.

### 1.  Factor Two: Otherwise Qualified with Reasonable Accommodation

Under Ohio law, a "'qualified disabled person' means, with respect to employment, a disabled person who can safely and substantially perform the essential functions of the job in question, with or without reasonable accommodation." Ohio Admin. Code § 4112-5-02(K). Hines must show that "[he] is 'otherwise qualified' for the position despite his . . . disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation." *Kleiber v. Honda of Am. Mtg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). This case addresses whether Hines was otherwise qualified for his position with Humana with a proposed reasonable accommodation.

Humana rests much of its "unqualified" argument on the fact that Hines came to work for one day in November 2018 and stated that he could not answer the phones. It is well-established, however, that an employee "requesting medical leave often cannot perform their jobs when they request leave, and medical leave allows them time to recover from illness or medical procedures." *Blanchet v. Charter Communications, LLC*, 27 F.4th 1221, 1229 (6th Cir. 2022). Therefore, this Court must determine whether Hines would be "otherwise qualified" to perform his essential job functions with the proposed accommodation.

As Romero, Hines' supervisor testified, prior to his illness, Hines was moved to her team due to his excellent performance. As such, at the time Hines requested the accommodation, Humana had no reason to conclude that Hines' performance would deteriorate when he returned to work in April or May 2019, as indicated by his doctors. *Blanchet, LLC*, 27 F.4th at 1229 (finding that employee seeking medical leave to treat postpartum depression could be considered otherwise qualified for her position with the accommodation of medical leave as she had performed her job well prior to requesting time off). Despite Defendant's assertion that Hines was unqualified because answering the phone was an essential function of his position, Hines did not request an accommodation that would permanently remove his ability to answer the phones. *See, E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 763 (6th Cir. 2015) (en banc). A reasonable jury could find that Hines requested a temporary accommodation in hopes that he could fully fulfill the attendance requirement once his medical leave was over, leaving a genuine dispute of material fact as to whether he was qualified for the role with an accommodation.

"[M]edical leave can constitute a reasonable accommodation under the ADA." *Williams v. AT&T Mobility Servs., LLC*, 847 F.3d 384, 394 (6th Cir. 2017); *see Matasy v. Youngstown Ohio Hosp. Co.*, 95 N.E.3d 744, 752 (Ohio Ct. App. 2017) (citing *Foster v. Jackson Cnty. Broad. Inc.*, 2008 WL 109649 (Ohio Ct. App. 2008)). When assessing reasonableness, courts consider: "(1) the amount of leave sought; (2) whether the requested leave generally complies with the employer's leave policies; and (3) the nature of the employee's prognosis, treatment, and likelihood of recovery." *King v. Steward Trumbull Memorial Hospital*, 30 F.4th 551, 562 (6th Cir. 2022). The reasonableness of a proposed accommodation is a question of fact best reserved for a jury. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998).

9

Although Humana characterizes Hines' request as one for indefinite leave, there are facts sufficient to support the opposite conclusion. Hines' doctors informed UNUM that he would be able to return to work in some capacity by April or May 2019. Even though Hines had exhausted his FMLA and STD benefits, the projected return date was well within the 52-weeks of unpaid LTD leave provided for under the ADA—therefore, also complying with Humana's leave policy. Even if this Court were to treat the return day as an estimate, the Sixth Circuit has concluded that estimates of return-to-work dates are acceptable where there is no history of absenteeism prior to the medical leave, the employee requested leave, and provided medical support for her absences. *Blanchet, LLC*, 27 F.4th at 1231. While Humana argues that the likelihood that Hines would recover by the dates projected by his doctors was speculative, given the several prior extensions, the medical records cited indicate otherwise. Therefore, there remains a genuine issue of material fact as to whether his request for accommodation was reasonable.

### 2. *Factor Four: Requested an Accommodation*

Plaintiffs are generally given flexibility in how they request an accommodation. *Mobley v. Miami Valley Hosp.*, 603 Fed. App'x 405, 413 (6th Cir. 2015) (citing *Talley v. Family Dollar Stores, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008)). The employee does not need to explicitly use the word "accommodation." *Leeds v. Potter*, 249 Fed. App'x 442, 449 (6th Cir. 2007)). And the request need not identify the perfect accommodation. *King*, 30 F.4th at 564 (citing *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 779 (6th Cir. 2015) (Moore, J., dissenting)). That said, an employee must "make it clear [ ] that he is making a request . . . because of his disability." *Waggoner v. Carlex Glass Am., LLC*, 682 Fed. App'x 412, 416 (6th Cir. 2017). Once an employee requests an accommodation, "'the employer ha[s] a duty to engage in an interactive process' to try to determine

10

whether the employer can accommodate the employee's disability." *Id.* (quoting *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 421 (6th Cir. 2020)).

There remains a genuine dispute of material fact as to whether Hines' March 29, 2019 email informing Romero that he was not yet released by his physician to work constituted a request for an accommodation. Plaintiff's deposition statement that he did not request an accommodation, (*see* ECF No. 29 at 177:24–177:1), cannot be viewed in a vacuum, as Defendant suggests. First, Plaintiff testified that he understood UNUM and Humana to be communicating and that they already had all the medical information they needed to provide a continued accommodation. *Id.* at 168:18–25. Second, the March 29, 2019 email caused O'Connell to instruct Romero to send Plaintiff the ADA packet for continued accommodation—and reasonable jurors could conclude that discussion of the email was confirmation that Plaintiff needed an accommodation. Third, on April 1, Plaintiff received a voicemail from Hodgkins informing him that he was being reviewed for LTD, prior to his termination on April 3. While Plaintiff may not have requested an accommodation using those exact words, when viewed in the light most favorable to the Plaintiff, these factors indicate that not only did Plaintiff relay to Humana that he needed an additional accommodation, but Humana also understood he needed said accommodation. *Shaver v. Wolske & Blue*, 180 Ohio App.3d 653, 742 N.E.2d 164, 174–75 (10th Dist. 2000) (finding that a genuine dispute of material fact existed as to whether an accommodation request was made where the wife of employee with depression informed employer of his condition, treatment, and need for time off work); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (recognizing that third parties, such as family members, friends, or health professionals, may request an accommodation on the employee's behalf and said request does not have to be in writing, does not have to mention

the ADA, and does not have to used the words "reasonable accommodation" as long as the notice makes it clear the employee needs assistance)

### 3. Factor Five: Employer Failed to Provide Necessary Accommodation

Construing the facts in favor of Hines, Humana terminated his employment absent the creation of an accommodation. If Plaintiff establishes that the March 29 email was in fact a request for an accommodation, a jury could conclude that Humana's obligation was to send Hines the ADA packet, and thus beginning the interactive process to find a reasonable accommodation. *Waggoner*, 682 Fed. App'x at 416. Conversely, a jury could conclude that Hines' use of FMLA and STD benefits already constituted a reasonable accommodation. As this factor is only applicable where a jury finds that Hines requested an accommodation in the first place, however, there remains a genuine dispute of material fact regarding this matter.

Therefore, Defendant's Motion for Summary Judgment as to Count I(a) for failure to accommodate is **DENIED**.

### B. Counts I(b), V, and VI: Discrimination

#### 1. Count I(b): Termination Due to Disability Discrimination

Defendant argues that Plaintiff was not terminated because of his disability, nor did he suffer an adverse employment action because, after eight months, he failed to return, request an extension, or submit documentation supporting further leave. (ECF Nos. 32 at 26; 47 at 26). Defendant maintains that Hines could not perform any essential functions of his job. (*Id.* at 27).

Plaintiff counters, however, that a jury could conclude that Defendant's "refusal to accommodate Plaintiff by providing additional leave without pay resulted in an illegal termination 'because of' his disability." (ECF No. 37 at 22). Plaintiff argues that his employment ended because Humana manipulated the process by failing to provide him information about LTD

benefits and used that as an excuse to initiate his termination. (*Id.* at 23). Plaintiff alleges that he timely complied with Humana's March 25, 2019 return to work letter by contacting Romero, and his dismissal was based on the false assertion that he failed to timely respond or provide the required medical information. (*Id.* at 24). Plaintiff maintains that he qualified for the Customer Care Specialist position with the reasonable accommodation of extended leave. (*Id.*).

Plaintiff argues that Humana had pretext for terminating him: (1) Humana's failure to provide Plaintiff with the choice to go on non-paid LTD deviated from its policy or practice; (2) Humana was aware that he was still under a doctor's care per UNUM and that he would be transitioning to LTD in May 2019; (3) the March 25, 2019 letter only required Plaintiff to contact his supervisor if he could not return to work, which Plaintiff did, and did not tell him to request an accommodation; (4) Humana did not ask him for more information or documentation regarding his need for extended leave like it did with Kati Fuller—a white female colleague who had also exhausted short-term medical leave; and (5) Humana was aware that Hines could return to work in a few months, not that he was intending to take indefinite leave. (*Id.* at 37–42).

Defendant responds that regardless of whether it deviated from its long-term unpaid leave practices, the policy is discretionary, meaning there was "nothing from which to 'deviate.'" (ECF No. 47 at 26). According to Defendant, just because the policy exists does not require Humana to provide leave for employees, especially where said employee had not yet been approved for LTD and did not have a set return date. (*Id.*). Further, Humana maintains that there was nothing nefarious about it interpreting Hines' March 29 email as a resignation because he had no substantive explanation for his absence, no supporting documentation, and did not request an accommodation. (*Id.* at 27).

To establish a prima facie claim for disability discrimination, an employee must demonstrate: (1) he was disabled; (2) he suffered an adverse employment action based, at least in part, on that disability; and (3) he could safely and substantially perform the essential function of the job with or without reasonable accommodation. *Taylor v. Ohio Dept. of Job & Family Servs.,* 2011-Ohio-6060, 2011 WL 5878335, ¶ 19 (10th Dist.); *Columbus Civ. Serv. Comm. v. McGlone,* 82 Ohio St. 3d 569, 571, 1998-Ohio-410, 697 N.E.2d 204, 206 (Ohio 1998). The burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the action. *Greer-Berger v. Temesi,* 116 Ohio St.3d 324, ¶ 14, 2007-Ohio-6442, 879 N.E.2d 174, 180 (Ohio 2007). If the employer does so, the burden shifts back to the employee to demonstrate "'that the proffered reason was not the true reason'" for the adverse employment action. *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). In general, "courts have found that a plaintiff establishes pretext by proving one or more of the following: (1) that the employer's proffered reasons for the adverse employment action had no basis in fact, (2) that the proffered reasons were not the true reason(s), or (3) that the proffered reason(s) were insufficient to motivate discharge." *Nelson v. Univ. of Cincinnati,* 2017-Ohio-514, 75 N.E.3d 1304, ¶ 35 (10th Dist.).

A disability is a "physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Here, the parties do not dispute that Hines suffered from a mental impairment that substantially limited his ability to work, and this Court concluded *supra* that there remained a genuine dispute of material fact as to whether Plaintiff was qualified to work his position with a reasonable

accommodation—addressing factors one and three. Therefore, this Court's analysis turns on prong two—whether he suffered an adverse employment action based, at least in part, on the disability.

It is well established under Ohio law that termination of employment is an adverse employment action. *Eschborn v. Ohio Dep't of Transp.*, 2018-Ohio-1808, ¶ 14, 112 N.E.3d 51, 55 (10th Dist.). Whether it is described as a resignation or termination, Hines' employment ended. There remains a genuine issue of material fact as to whether Humana's proffered reason—that Hines was unqualified and resigned—was pretext for disability discrimination. Viewing the evidence in a light most favorable to Hines, a jury could conclude that Hines' termination was motivated by his disability and that Plaintiff sufficiently established pretext. There is probative evidence to support that conclusion: (1) in March 2019, Hodgkins informed O'Connell that Hines health was so poor that she would have approved him for STD through the end of March if he had STD remaining, (*see* ECF No. 31 at 28:20–29:2); (2) O'Connell told Jackson and Romero to provide the ADA LTD packet to Plaintiff on April 1, but it was never provided; and (3) there was no discussion between Hines and Humana about choosing to go on unpaid leave or resign pursuant to company policy. If believed, these factors point toward Humana taking conscious steps to withhold information and failing to provide a reasonable accommodation for Hines.

Because Plaintiff raises a genuine issue of material fact as to pretext, the trier of fact must determine the ultimate issue of whether Humana discriminated against Hines. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 14 (Ohio 2005). Therefore, Defendant's Motion as to Count I(b) for disability discrimination is **DENIED**.

### 2. *Count V: Retaliation for Sex Discrimination*

In Count V, Plaintiff asserts that Defendant retaliated against him in violation of O.R.C. § 4112.02(I) and 42 U.S.C. § 1981, for opposing sex-based discrimination. (ECF No. 14 at 8). Just

as in Count I(b), Humana argues that Plaintiff did not suffer an adverse employment action, which is necessary to state a claim for retaliation under Ohio law. (ECF No. 32 at 29). Humana maintains that he did not engage in a protected activity, because he never complained about discrimination based on sex or race. (*Id.*; 47 at 17). Plaintiff counters that he is not required to say the "magic words" of sex and race discrimination, as he sufficiently stated in his January 2018 complaint that he did not receive certain promotions because of his membership in a "certain demographic" and favoritism for his female colleagues. (ECF No. 37 at 30–31).

Humana replies that vague references to discrimination, untied to a protected class are insufficient to allege discrimination. (ECF No. 47 at 18 (citing *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989)). Therefore, Humana was unaware that Hines was referring to a protected class. (*Id.* at 21–22). Humana maintains that fourteen months passed between Hines' January 2018 complaint and his termination in March 2019, which is too long to support a causal connection between the two. (*Id.* at 22).

As a threshold matter, Plaintiff cannot allege retaliation for sex discrimination pursuant to 42 U.S.C. § 1981, as the statute only provides relief for employment discrimination where that discrimination is motivated based on race. *Hout v. City of Mansfield*, 550 F.Supp.2d 701, 720 (N.D. Ohio 2008). Allegations of retaliation based on sex discrimination can be brought pursuant to O.R.C. § 4112.02(I), which provides:

> It shall be an unlawful discriminatory practice: * * * (I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person had made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

To establish a retaliation claim, a plaintiff must demonstrate that: (1) they engaged in protected activity; (2) the defending party knew the plaintiff engaged in the protected activity; (3)

the defending party took an adverse employment action against the plaintiff; and (4) a causal connection between the protected activity and the adverse action. *Nebozuk v. Abercrombie & Fitch Co.*, 2014-Ohio-1600, ¶ 40, 2014 WL 1481062, at *10 (10th Dist.) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). Retaliation must be a determinative factor, not just a motivating factor, in the employer's decision to take the adverse employment action. *Id.* at ¶ 45. If the plaintiff establishes a prima facie case of retaliation, the burden shifts back to the employer to articulate a legitimate, non-retaliatory reason for its action. *Id.* at ¶ 41, citing *Carney v. Cleveland Hts.-Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 429 (8th Dist. 2001). If the employer carries its burden, the employee must then establish that the employer's stated reason is a pretext for unlawful retaliation. *Id.*, citing *Carney* at 429. Because R.C. § 4112.02(I) models Title VII of the Civil Rights Act of 1964, Ohio courts look to federal case law to interpret state law retaliation claims. *Moody* at ¶ 35 (citing *Grubach v. Univ. of Akron*, 2020-Ohio-3467, ¶ 67, 2020 WL 3469691, at *18 (10th Dist.)).

This Court established that there remains a genuine dispute of material fact as to whether Plaintiff suffered an adverse employment action—factor three. Therefore, this Court focuses its analysis on factors one, two, and four. An employee engages in protected activity—factor one— by opposing unlawful discriminatory practice, "regardless of whether the conduct or policy . . . was, in fact, unlawful." *See Robinson v. Quasar Energy Group LLC*, 2014-Ohio-4218, ¶ 20, 2014 WL 4748535, at *4 (8th Dist.). In the employment context, an employee communicating her belief that the employer has engaged in discriminatory conduct constitutes protected activity. *Id.*, ¶ 19.

Plaintiff's Second Amended Complaint only brings a retaliation claim pursuant to sex discrimination, not race discrimination. (ECF No. 14 at 8). Plaintiff's January 2018 complaint references fairness in internal hiring practices, shift bid process, and award programs, but nowhere

states that Plaintiff believed he was being discriminated against based on sex. (ECF No. 32 at 29). While Plaintiff mentions specific female colleagues who received roles he was denied, his complaint focuses on the difference in their experience, not their gender.

Ohio law is well settled that an employee alleging discriminatory retaliation must relate the protected conduct to a protected class, as allegations about issues with internal business processes are insufficient. *See Balding–Margolis v. Cleveland Arcade,* 352 Fed. App'x. 35, 45 (6th Cir.2009) (holding that plaintiff did not engage in protected activity under Title VII or R.C. Chapter 4112, where she made "several complaints to . . . management concerning general work-related issues. . . but there is nothing in these complaints indicating that [plaintiff] was objecting to discriminatory conduct against her based on her membership in a protected class."); *Coch v. Gem Indus.*, 2005-Ohio-3045, ¶ 33, 1005 WL 1414454, at *6 (6th Dist. July 5, 2005) (concluding plaintiff did not engage in a protected activity where her conversation with another employee only discussed certain Caucasian and one Mexican employee who had been put on light work rather than sent home, and where one employee in the conversation never mentioned race, but claimed that he "inferred" race in a roundabout way hoping the other employee would draw the conclusion that he was making a race complaint as an African American male); *Valentine v. Westshore Primary Care Assoc.*, 2008-Ohio-4450, ¶ 114, 2008 WL 4078440, at *16 (8th Dist.) (concluding that employee failed to allege race discrimination in meeting with supervisor where she complained about being only member of team to receive reprimand regarding overtime).

Further, Plaintiff admitted in his deposition that he specifically chose not to mention sex or race in his complaint so as to not "cause any controversy." (ECF No. 29 at 64:14–23). While Plaintiff also stated that he spoke about the issue with an associate, seemingly Romero pursuant to the January 2018 complaint, his comment about being a member of a "certain demographic"

referred to experiences he had prior to working at Humana that caused him to distrust the internal hiring process at Humana but were not specific to his experience at Humana. (ECF No. 29 at 100). Without making a sufficiently clear statement, Humana could not have been on notice that Hines was participating in a protected activity—factor two.

Even if this Court were to assume that Hines established that he was engaged in a protected activity by filing the complaint, he must still demonstrate a causal connection between the complaint and his termination—factor four. Ohio courts recently explained:

> A causal connection can be shown through direct evidence or through knowledge coupled with a closeness in time that creates an inference of causation. Close temporal proximity between the employer's knowledge of the protected activity and the adverse employment action alone may be significant enough to constitute evidence of a causal connection, but only if the adverse employment action occurs very close in time after an employer learns of a protected activity. However, where some time elapses between when the employer learns of the protected activity and the subsequent adverse employment action is taken, the employee must produce other evidence of retaliatory conduct to establish causation.

*Sullivan v. IKEA*, 2020-Ohio 6661 at ¶ 37, 2020 WL 7329934 at *7 (12th Dist. Dec. 14, 2020) (internal citations omitted). In this case, Hines filed his complaint in January 2018 and was terminated in March 2019, fourteen months later. Ohio courts generally find must lesser periods fail to demonstrate a causal connection. *See Sullivan*, 2020-Ohio 6661 at ¶ 37 (finding no inference of causation could be made from four-month period between complaint and termination); *Spitulski v. Toledo School Dist. Bd. Of Edn.*, 2018-Ohio-3984, 121 N.E.3d 41, ¶ 78 (6th Dist.) (2 months); *Motley*, 2008-Ohio-2306 at ¶ 18 (10th Dist.) (over 2 years); *Mendlovic v. Life Line Screening of Am., Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 41 (8th Dist.) (2 to 3 months); *Aycox v. Columbus Bd. Of Edn.*, 2005-Ohio-69, 2005 WL 44441, ¶ 23 (10th Dist.) (more than a year); *Balletti v. Sun–Sentinel Co.*, 909 F.Supp. 1539, 1549 (S.D. Fla. 1995) (6 months); *Reeves v. Digital Equip. Corp.*, 710 F.Supp. 675, 677 (N.D. Ohio 1989) (3 months); *Cooper v. City of North*

*Olmsted*, 795 F.2d 1265, 1272–1273 (6th Cir. 1986) (4 months). Finally, Hines does not submit any other evidence of retaliatory conduct between the filing of his complaint in January 2018 and his termination, as he went on leave beginning in July 2018.

As Plaintiff fails to establish a prima facie case for retaliation based on sex discrimination, Defendant's Motion for regarding Count V is **GRANTED**.

### 3.  *Count VI: Intersectional Race and Sex Discrimination*

In Count VI, Plaintiff asserts a claim for intersectional race and sex discrimination due to his status as an African American male. (ECF No. 14 at 8). Humana argues that Hines: (1) did not suffer an adverse employment action but was terminated for a legitimate reason; (2) was unqualified to do his job because he could not do the essential function of answering the phone; and (3) was not replaced by anyone, let alone, someone outside of his identified class. (ECF No. 32 at 30–31). Further, Humana points to Hines' deposition where he stated that he did not believe jobs nor awards were given out based on race or sex. (*Id.* at 31 (citing ECF No. 29 at 88:20–92:17)). Humana maintains that Hines cannot demonstrate discriminatory pretext for his termination because he was terminated for failure to provide Humana information to justify continued leave, and Humana had no obligation to send Hines the ADA packet with LTD information where Humana alleges Hines never requested an accommodation. (*Id.* at 32–33).

Plaintiff again counters that a jury could find that he was objectively qualified for his position despite his absence, that he was a member of a protected class as a Black male, and he was treated differently than Kati Fuller—a similarly situated Caucasian female. (ECF No. 37 at 33). Specifically, Plaintiff alleges that Fuller, who had also exhausted her FMLA and STD benefits was provided information about ADA LTD benefits from her supervisor and additional time to submit the requested medical information. (*Id.* at 34–35). Plaintiff also argues that two Black males

on his team, Ashton Rone and Kevin Reese, were terminated after making complaints, demonstrating discrimination towards Black male employees. (*Id.* at 34).

In addition to reiterating that Plaintiff was not qualified for the position, Humana's reply turns on the argument that Hines fails to identify a similarly situated employee who was treated more favorably. (ECF No. 47 at 23). Defendant argues that to be deemed "similarly situated" the individual with whom Hines compares himself must have dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct for which he alleges improper treatment. (*Id.* at 24 (citing *Smith v. Bank One, N.A.*, 229 F.3d 1153, table (6th Cir. 2000))). Defendant alleges that Kati Fuller—the Caucasian, female colleague who exhausted FMLA and STD, was sent the LTD ADA packet, and given additional time to provide the appropriate medical documentation—reported to Ranesha Jenkins who was not Hines' supervisor at the time. (*Id.* at 25). Finally, Defendants maintain that Reese and Rone, two Black male employees, were terminated for violating company policy—namely, hanging up on a caller and transferring a call without informing the caller. (*Id.* at 25).

A plaintiff may satisfy the burden of establishing a *prima facie* case of discrimination by presenting direct or circumstantial evidence of discriminatory actions. Because Plaintiff has not presented any direct evidence of discrimination, *see e.g., Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 650 (6th Cir. 2012) (concluding that a reasonable jury could find that race was a motivating factor in a company's decision to terminate an employee when prior to firing the plaintiff, her supervisor stated "how [could he] keep the white girl."), Hines bears the burden of establishing a *prima facie* case of indirect discrimination by preponderance of the evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was

qualified for the position; and (4) the similarly situated, non-protected individuals were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Coryell v. Bank One Trust Co., N.A.*, 101 Ohio St.3d 175, 2001-Ohio-783, ¶ 9, 803 N.E.2d 781, 177 (Ohio 2004).

To be similarly situated, the individual with whom Hines seeks to compare his treatment must have dealt with the same supervisor, was subject to the same standards, and engaged in the same conduct without factors that could distinguish their conduct or Humana's treatment. *Speller v. Toledo Public Schools Bd. of Educ.*, 2017-Ohio-7994, ¶ 26, 98 N.E.3d 1066, 1073 (6th Dist.). The proffered individual's conduct must be of "comparable seriousness" to conduct predicating the plaintiff's adverse treatment. *Waddell v. Kenner/Grant Medical Care Foundation*, 2017-Ohio-1349, ¶ 33, 88 N.E.3d 664, 677 (10th Dist.). A plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment, but that they are similarly situated in all *relevant* aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (finding that three, older, human resources employees' positions were similarly situated, even though they had different job responsibilities, where their positions were all eliminated by a company reorganization and younger employees, not the older employees, had been offered the opportunity to transfer jobs) (emphasis added). To determine whether the plaintiff and the non-protected party committed the same conduct, but plaintiff's disciplinary action was motivated by discriminatory animus, courts look to the "comparable seriousness" of their actions. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 778 (6th Cir. 2016).

Once the Plaintiff makes this showing, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). The burden then shifts back to the plaintiff to demonstrate pretext, that is, that the employer's reasoning was "fabricated to conceal an illegal motive." *Id.* A plaintiff demonstrates

pretext where defendant's nondiscriminatory reason for defendant's action: "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 258 (6th Cir. 2002).

Pursuant to O.R.C. § 4112.02(A), both race and sex are protected groups under Ohio's employment anti-discrimination laws. Because a different standard is applied to cases of reverse sex discrimination, this Court will address Plaintiff's race discrimination claim first. This Court's inquiry, however, turns on factor four—whether Plaintiff was similarly situated to a non-protected class member who received better treatment. Plaintiff is an African American male and race is well established as a protected class, which meets factor one. Further, this Court concluded *supra* that termination is an adverse employment action—factor two—and there remained a genuine issue of material fact as to whether Plaintiff was qualified for his position—factor three.

Kati Fuller's supervisor, Rhanesha Jenkins, was not Plaintiff's supervisor. This fact alone, however, is not fatal to Plaintiff's race discrimination claim. Ohio courts have long held, that to be similarly situated, the plaintiff and the more favorably treated party must have the same supervisor in disciplinary matters, especially where the alleged discriminatory disciplinary action results in the termination of the plaintiff's employment. *Bowditch v. Mettler Toledo*, 2013-Ohio-4206, ¶ 19, 2013 WL 5436537, at *5 (10th Dist.) (citing *Ercegovich*, 154 F.3d at 352). This is not a hard and fast rule, however, where the facts are different. For example, in *Sutherland*, the court concluded that different supervisors did not preclude comparison of employees in an employment discrimination suit regarding discriminatory hiring practices. *Sutherland v. Nationwide Gen. Ins. Co.*, 96 Ohio App.3d 793, 645 N.E.2d 1338 (10th Dist. 1994). There the court rejected the employer's narrow interpretation of the "same supervisor" requirement because the alleged comparables did not report directly to the same supervisor." *Id.* at 802–03. The court reasoned that

23

a senior executive in the company was really the one responsible for making hiring decisions for both comparables, and therefore, having different immediate supervisors was not relevant to the inquiry. *Id.* at 802.

As this court explained *supra*, there is a genuine dispute of material fact as to whether Hines' release from employment was a termination or a resignation. If it was a termination, Hines' release could be considered a disciplinary action for failure to provide the required medical information, making the "same supervisor" factor important. If it was a resignation, however, that factor may be immaterial. Regardless, there was more than one person involved in the decision to send Plaintiff the ADA packet and the March 25 RTW letter, and the decision to interpret Plaintiff's March 29 email as a resignation. Yet, it is not clear to this Court who had final authority to make that decision.

Defendant argues that Fuller was actually coming to work when she received the ADA LTD benefits information, and her condition was temporary and had a definite end date, unlike Hines'. While the circumstances of the differences in their medical conditions could certainly constitute a legitimate reason for difference in treatment, the same difference in treatment could be interpreted as pretext for Humana's action. First, Humana fails to provide any evidence to support the assertion that her return date was definite as compared to Hines' return. Second, Humana offers no explanation for the decision not to provide the ADA LTD benefits information to Hines, while they not only provided it to Fuller, but allowed her additional time to submit supporting medical documentation for her claim. Even when a policy "cannot be construed as an absolute guarantee"—for instance, when a company's reduction-in-force policy states that temporary employees will "generally" be the first to be laid off—an "arguable failure to follow its own written . . . policy can support the inference that it was determined to layoff employees on the

basis of age." *Coburn v. Rockwell Automation, Inc.*, 238 Fed. App'x. 112, 126 (6th Cir. 2007). A jury can consider the failure to follow the general policy as evidence of pretext. *Id.*; *see also Skalka v. Fernaldo Envtl. Restoration Mgmt. Co.*, 178 F.3d 414, 422 (6th Cir. 1999) (holding that a jury need not accept as credible an employer's explanation of why it deviated from its stated reduction-in-force procedure). Therefore, there remains a genuine dispute of material fact as to whether Humana racially discriminated against Hines as related to Fuller and receipt of ADA LTD benefits.

As it related to Hines' two Black male colleagues who were terminated, however, Plaintiff makes only conclusory statements that they were terminated because of filing complaints. Defendant, however, responds that both Rone and Reese were terminated for violating company policy. (ECF No. 30 at 22:15–25:17). Hines provides no evidence of pretext beyond blanket assertions of discrimination. Without more, this Court cannot substantiate a claim for racial discrimination as related to retaliation. Therefore, Defendant's Motion regarding Plaintiff's race discrimination claim is **DENIED in part** as it pertains to allegations of discriminatory treatment resulting from different procedures followed in dispersing ADA LTD information, but **GRANTED in part** as it pertains to allegations of race discrimination resulting from retaliation for submitting internal complaints.

In cases involving reverse gender discrimination, the plaintiff must establish: "(1) background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority; and (2) that the employer treated employees who are similarly situated, but not a member of the protected group, more favorably." *Tack v. PCC Airfoils, Inc.*, 2008-Ohio-6898, ¶ 24, 2008 WL 5393146, at *3 (5th Dist. Dec. 24, 2008). Examples of "background circumstances" include statistical analysis of the employer's unlawful consideration of protected characteristics in past employment decisions, *see Sutherland v. Mich. Dep't of*

*Treasury*, 344 F.3d 603, 614 (6th Cir. 2003), the fact that a minority employer replaced the plaintiff with another employee of the same minority group, *see Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 257 (6th Cir. 2002), and evidence of "organizational preference" for hiring members of a minority group. *Nelson v. Ball Corp.*, 656 Fed. App'x 131, 136–37 (6th Cir. 2016) (quoting *Sampson v. Sec'y of Transp.*, 182 F.3d 918, 1999 WL 455399, at *1 (6th Cir. June 23, 1999) (unpublished)); *see also Romans v. Mich. Dep't of Hum. Servs.*, 668 F.3d 826, 837 (6th Cir. 2012) (noting that evidence of past hiring policies favoring minority applicants may demonstrate the necessary "background circumstances" of reverse discrimination (internal citations omitted)).

Hines does not meet this requirement. He has not "present[ed] significant evidence in the form of statistical data tending to show in the years prior to the employment decision at issue, [] [Humana] considered [sex] in making employment decisions." *Sutherland*, 344 F.3d at 615. He has not "submitted a large number of [Humana] policies and procedures which reflect an organizational preference for establishing a diverse group of employees," or in fact any such policies or procedures to that effect. *Sampson*, 1999 WL 455399, at *1. The only support Hines can provide is anecdotal. Therefore, Defendant's Motion is **GRANTED** for Plaintiff's reverse sex discrimination claim.

### C.  Count III: Breach of Contract

In Count III, Hines asserts a breach of contract claim alleging Humana breached the terms of its Investigations Policy by retaliating against him for submitting complaints. (ECF No. 14, ¶¶ 31–33). Humana maintains that the Investigations Policy is not a contract because Hines provided no consideration to Humana and the policy expressly states that Humana can change the policy at its own discretion, making it a unilateral contract. (ECF Nos. 32 at 34; 47 at 15).

Although Plaintiff responds by labeling this claim as Count II, this Court interprets Plaintiff's argument as responding to the breach of contract claim, Count III. (ECF No. 37 at 25). Plaintiff counters that his continued employment was sufficient consideration binding Humana to the Investigations Policy. (*Id.* at 26). Because Humana did not change its policy prior to Plaintiff's "performance," a binding contract was formed, according to Plaintiff. (*Id.* (citing *Bahr v. Technical Consumer Products, Inc.*, 601 Fed. App'x 359 (6th Cir. 2015) (court awarded summary judgment to employee despite company's reserved discretion regarding bonuses because company failed to exercise discretion to alter bonuses before employee's full performance))).

While Ohio courts have held that employee handbooks are not in and of themselves contracts of employment, they may provide the terms and conditions of employment where the employer and employee manifest an intention to be bound. *Finsterwald-Maiden v. AAA S. Cent. Ohio*, 115 Ohio App. 3d 442, 446–47, 685 N.E.2d 786, 789–90 (4th Dist. 1996). Employment manuals may constitute binding contracts, but "an employee who asserts the existence of an implied contract must prove the existence of each element necessary for the formation . . . of a contract, including, offer, acceptance, consideration, and mutual assent." *Staschiak v. Certified Logistics*, 2016-Ohio-897, ¶¶ 22–23, 60 N.E.3d 824, 827–28 (11th Dist.) (quoting *White v. Fabiniak*, 2008-Ohio-2120, ¶ 17, 2008 WL 1932099, at *4 (11th Dist.)).

Several Ohio appellate courts have concluded that employee handbooks can be construed as an offer made by the employer, accepted by an employee by taking the position, and that continued employment pursuant to that handbook is adequate consideration for an implied contract to form. *Whistler v. W. Reserve Care Servs.*, 1001-Ohio-3498, 2001 WL 1647282, at *4 (7th Dist. Dec. 24, 2001); *Galgoczy v. Chagrin Falls Auto Parts, Inc.,* 2010-Ohio-4684, 2010 WL 3816328, at *1 (8th Dist. Sept. 30, 2010). *See also Long Bus. Sys., Inc. v. Bable*, 2002 WL 606281, at *2

(11th Dist. Apr. 19, 2002) (continued employment can be "consideration for changes to the terms and conditions under which the employee is employed"); *cf. Staschiak*, 2016-Ohio-897, ¶ 29 (explaining that employee handbook that lacked any language stating that employer could alter policies at its discretion could be considered an implied contract).

Ohio courts have also long held, however, that employee handbooks that contain disclaimers either explicitly stating that the handbook does not constitute a contract or provides the employer unilateral ability to alter the terms of the handbook negate any inference of a contractual obligation between the employer and employee. *Elita One v. Emergency Med. Transp., Inc.*, 2021-Ohio-2990, ¶ 15, 176 N.E.3d 1187, 1192 (11th Dist.); *Finsterwald-Maiden*, 115 Ohio App. 3d at 446–47 (finding no mutual assent to form a binding contract where employee handbook stated that it "may change its policies and procedures as it deems necessary"); *Karnes v. Drs. Hosp.,* 51 Ohio St. 3d 139, 141, 555 N.E.2d 280, 282 (Ohio 1990) (finding no binding contract where employee manual disclaimed intent to create a contractual relationship and employee denied that the handbook was the product of negotiation between her and her employer); *Fennessey v. Mt. Carmel Health Sys., Inc.*, 2009-Ohio-3750, ¶¶ 23–24, 2009 WL 2331868, at *6–7 (10th Dist.) ("If employers have the right to make gratuitous statements concerning employment policies, it logically follows that employees may not rely upon those statements as manifesting a mutual intent to be bound by the pre-existing terms of those policies."); *cf. Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (Ohio 1991), paragraph one of the syllabus ("Absent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms of the employee handbook.").

Humana's "Associate Work-Life Policies & Processes" in place during the time at issue explicitly state, as related to internal complaint investigations, that it is "subject to change or

28

termination by Humana at any time." Given the explicit language giving unilateral authority to Humana to alter the policy, Plaintiff's breach of contract claim must fail, as there is no evidence present indicating mutual assent. Therefore, Defendant's Motion for Summary Judgment as to Count III – Breach of Contract is **GRANTED**.

### D.  Counts II and IV: FMLA Retaliation and Promissory Estoppel

In Count II, Plaintiff alleges that Defendant violated 29 U.S.C. § 2615(a) by discriminating against Plaintiff for use of his protected leave under FMLA. Defendant argues that Hines cannot draw a causal connection between his initial FMLA leave in July 2018 and his termination in April 2019. (ECF No. 32 at 28 (citing *Nolen v. Fedex Servs.*, No. 13-6245, 2014 WL 12887530, * 3 (6th Cir. May 14, 2014) (finding that nine months between FMLA leave and termination was too long to support an inference of retaliation alone)). Defendant maintains that Hines' admitted in his deposition that he did not think he was retaliated against for taking FMLA leave. (*Id.* at 29 (citing ECF No. 29 at 177:21–24 ("Q. Do you believe you were retaliated against because you took FMLA? A. I don't think it had anything to do with FMLA."))).

In Count IV, Plaintiff alleges that he relied upon Defendant's "clear and unambiguous promise to Plaintiff that there would be no retaliation for making complaints under" Humana's Investigations Policy. (ECF No. 14, ¶ 35). Because Plaintiff argues that he suffered a detriment through the loss of his job, he seeks promissory estoppel enforcement of Defendant's promise. (*Id.*). Defendant argues the Investigations Policy does not and cannot constitute a promise of employment because it can be changed at Humana's sole discretion, Hines testified in his deposition that he did not rely on the policy and would have made the complaints regardless, and the complaints were not the justification for his termination. (ECF No. 32 at 35–36).

In his Response, Hines, as the nonmoving party, must "present affirmative evidence [to] defeat a properly supported motion for summary judgment." *Halley v. Sw. Ohio Reg'l Transit Auth.*, 376 F.Supp.3d 793, 797 (S.D. Ohio 2019) (quoting *Anderson*, 477 U.S. at 257); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (explaining that failure to present any evidence in the form of affidavits, depositions, answers to interrogatories, and other evidence beyond just the pleadings, as required by Federal Rule of Civil Procedure 56(e), is grounds for granting a motion for summary judgment). Hines fails to respond to Defendant's arguments regarding Counts II and IV. Therefore, this Court **GRANTS** Defendant's Motion as it pertains to Counts II for FMLA Retaliation and IV for Promissory Estoppel, and these claims are **DISMISSED**.

### 4.  CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 32) is **GRANTED IN PART** for Counts II, III, IV, V, and the sex and retaliatory discrimination claims under Count VI; therefore, these claims are **DISMISSED WITH PREJUDICE**. It is **DENIED IN PART**, however, for Counts I and the race discrimination claims under Count VI.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 30, 2023**